**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

> FILED
>
> OCT 2 2 2020
>
> CLERK, U.S. DISTRICT COURT

**BENJAMIN FRANK BARRETT, JR.,**

        **Petitioner,**

v.                                                                **Criminal No. 4:15-cr-47-1**

**UNITED STATES OF AMERICA,**

        **Respondent.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Benjamin Frank Barrett, Jr.'s ("Petitioner") motion, through counsel, requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 73. The Government opposed the motion and Petitioner replied. ECF Nos. 79, 83. This matter is now ripe for judicial determination. For the reasons below, the Petitioner's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On July 9, 2015, Petitioner was named in a nine-count Indictment charging Petitioner with Conspiracy to Distribute and Possess with Intent to Distribute One Kilogram or More of Heroin and Fentanyl, in violation of 21 U.S.C. §§846 and 841(a)(1), (b)(1)(B)(i) and (b)(1)(C), (Count One); Distribution of Fentanyl Resulting in Death, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. §2 (Count Two); Use of a Communication Facility to Facilitate a Drug-Trafficking Felony, in violation of 21 U.S.C. § 843 (Counts Three, Five and Seven); and Distribution of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (Count Six). ECF No. 16. On October 5, 2015, Petitioner pleaded guilty to Counts One and Two of the Indictment. ECF No. 28. According to the Presentencing report ("PSR"), between April 2010 to June 2015, Petitioner served as the leader, organizer, and manager of a drug trafficking organization where they distributed heroin and fentanyl. ECF No. 47 at ¶ 6. The PSR calculated a

total offense level of 41 and a criminal history category of VI. *Id.* at ¶ 41, 98-99. On January 13, 2016, the Court imposed a total sentence of 264 months imprisonment and 10 years of supervised release. ECF No. 58. Petitioner's current projected release date from the Bureau of Prisons ("BOP") is March 8, 2034 and he is currently incarcerated at FCI Bennettsville, a medium security located in South Carolina. ECF No. 79 at Exhibit 1. To date, Petitioner has served about 27.9% of his sentence. *Id.*

On August 31, 2020, Petitioner filed his *pro se* motion for compassionate release. ECF No. 66. On September 30, 2020, Petitioner filed a motion through counsel. ECF No. 73. On October 15, 2020, the Government opposed Petitioner's request. ECF No. 79. On October 20, 2020, Petitioner filed a reply to the Government's opposition. ECF No. 83.

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic and argues that his underlying health conditions place him at a higher risk for serious illness if he contracts the virus. ECF Nos. 73, 83. At age 52, Petitioner claims he has hypertension, high cholesterol, and pre-diabetes. *Id.* Accordingly, Petitioner requests that this Court grant him compassionate release, amend his sentence to time served, and allow him to begin his period of supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative

2

remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

## B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A)

through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

**A. The Exhaustion Requirement**

The Court finds that Petitioner did not exhaust his administrative remedies prior to bringing his motion with the Court. On September 8, 2020, Petitioner filed a request to the Warden at FCI Bennettsville. ECF No. 73 at 14. However, Petitioner filed his *pro se* motion with this Court on August 31, 2020. Therefore, not more than 30 days had passed since Petitioner's request. However,

4

this Court has waived the exhaustion requirement given the COVID-19 pandemic and the catastrophic health consequences it has for inmates with underlying health conditions. *See United States v. Poulios*, N. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. April 21, 2020); *United States v. Casey*, No. 4:18-cr-4, 2020 WL 2297184, at *2 (E.D. Va. May 6, 2020); *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *Zukerman*, 2020 WL 1659880, at *3; *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *2. Accordingly, this Court waives the exhaustion requirement here.

### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez,* No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen,* No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner did not show a particularized susceptibility to COVID-19. Petitioner claims that he suffers from hypertension, high cholesterol, and pre-diabetes. ECF Nos. 73, 83. The Government argues Petitioner's ailments do not make him more susceptible severe illness if he contracts COVID-19. ECF No. 79 at 19. According to the Petitioner's BOP medical records, on

June 30, 2020, Petitioner had borderline stage 1 hypertension with a blood pressure of 131/78. ECF No. 76 at Exhibit 1; ECF No. 73 at 3. Moreover, Petitioner's medical records indicated that he had essential hypertension with blood pressure as high as 156/81 on May 9, 2020. *Id.* In order to treat his hypertension, Petitioner was prescribed two medications: amLODIPine and Lisinopril. *Id.* In October 2019, Petitioner's cholesterol level was 249 and decreased to 198 in May 2020, within the prescribed range. *Id.* Additionally, in October 2019, Petitioner's results revealed a LDL Cholesterol of 171; but, in May 2020, his LDL Cholesterol was 99, well within the prescribed range of 0-130. *Id.* According to the Centers for Disease Control and Prevention ("CDC"), individuals who have hypertension *might* also be at an increased risk for severe illness if they contract COVID-19.[1] The CDC does not recognize high cholesterol or pre-diabetes as underlying conditions that place individuals at risk. The Court finds that hypertension alone, when coupled with Petitioner's current age and medical treatment to manage his condition, does not place him at increased risk for serious illness if he contracts COVID-19. *See United States v. Thomas*, 5:13-cr-18, 2020 WL 3895781, at *4 (W.D. Va. July 10, 2020) (Denying compassionate release because Petitioner's hypertension diagnosis and race did not make him more susceptible to contracting COVID-19.).

Second, Petitioner does show a potential risk of contracting the disease at his prison facility. As of October 22, 2020, the BOP has reported 24 current positive cases of COVID-19 for inmates and 16 for staff as well as 91 past inmate cases at FCI Bennettsville.[2] Moreover, increased testing is showing that COVID-19 has rapidly spread throughout prisons all over the country.[3]

---

[1] Centers for Disease Control and Prevention, "People Who are at Higher Risk," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html
[2] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/
[3] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that Petitioner has a particularized risk of contracting the disease. However, as mentioned above, Petitioner does not suffer from an underlying health condition that places him at higher risk for severe illness if he contracts COVID-19.

Third, although Petitioner does have several positive § 3553(a) factors, they do not weigh in favor of compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner was the leader of a criminal organization where he sold heroin and fentanyl knowing that it could cause multiple overdoses and death. ECF No. 47 at ⁋ 28. Moreover, Petitioner has an extensive criminal history that includes violations of supervised release. *Id.* at ⁋ 59. Also, releasing Petitioner after only serving 5 years of a 22-year sentencing would not, in this case, promote the goals of deterrence and public safety. On the other hand, Petitioner has completed many education courses and he does not have any disciplinary violations while in BOP custody. ECF No. 73 at Exhibit 2. Despite some evidence of Petitioner's rehabilitative history, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" to grant compassionate release. 28 U.S.C. § 994(t). Therefore, the Court finds that Petitioner does not meet the necessary requirement that he show he has extraordinary and compelling reasons to warrant compassionate release because he does not have underlying conditions that place him at an increased risk of serious illness should he contract

COVID-19 and the § 3553(a) factors do not weigh in his favor.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**.

The Clerk is **DIRECTED** to provide a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Newport News, Virginia
October 22, 2020

Raymond A. Jackson
**United States District Judge**